UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| ANDRES PERALTA, ) | |
| ) | |
| ) | |
| v.  ) | Criminal No. 96-51-P-H |
| ) | Civil No. 07-41-P-H |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |

**Order Appointing Counsel**

Andres Peralta pled guilty to a conspiracy drug offense on November 19, 2004, and was sentenced by this Court in May 2005 to 135 months incarceration after the Court determined he was a career offender and awarded him two downward departures. Peralta has filed a 28 U.S.C. § 2255 motion and a supporting memorandum asserting three grounds. The United States has filed a response. Having reviewed the pleadings in this case and memoranda of Peralta and the United States, I am of the opinion that pursuant to 18 U.S.C. § 3006A(a)(2)(B) the interests of justice require counsel be assigned to represent Peralta. Peralta has previously filed a motion to proceed in forma pauperis. (Docket No. 3.) Having reviewed that motion, I am satisfied that Peralta qualifies for court appointed counsel. The federal defender was asked to represent petitioner, but that office has a conflict because of the defender's prior representation of a cooperating individual in this case. Attorney Bruce Merrill indicated upon inquiry by the clerk's office that he would accept this appointment. I now appoint him to represent Peralta on the petition.

The three grounds raised by Peralta are as follows: First, Peralta claims that his attorney delivered constitutionally inadequate assistance when he "wrongly, voluntarily" gave up on a

"winnable" motion to dismiss the indictment in reliance on a prosecution-promised "quid pro quo" sentence.  Second, Peralta believes that appellate counsel was ineffective when, after Peralta attempted to submit newly acquired evidence of Peralta's actual birth date to the First Circuit in a pro se submission in an effort to challenge his career offender status, counsel successfully moved to strike the filing without Peralta's permission.  And, third, Peralta argues that the United States "effectively 'breached the plea'" when it offered Peralta five years but then argued that he was a career criminal.  I am particularly concerned about the scope of ground one, the claim of ineffective assistance of trial counsel arising from the issues surrounding the abandoned motion to dismiss and the plea agreement with its attendant nullification in light of Peralta's career offender status.

The legal and factual significance, if any, of the document attached to the petition as appendix Exhibit A, which appears to be a trial transcript from the sentencing proceeding involving Peralta's youthful offender adjudication in the New York state court appears to me to be a primary concern.  It reveals that the New York judge who imposed the probationary sentence in that case believed that Peralta was seventeen-years-old at the time of sentencing. This transcript corroborates Peralta's assertion in this 28 U.S.C. § 2255 petition, as supported by the Dominican Republic birth certificate, that he was indeed seventeen at the time of the adjudication.  Whether or not this would have made a legal or factual difference to the federal sentencing judge and whether or not counsel's failure to fully investigate this situation is ineffective assistance in these circumstances, appear to me to be the primary unanswered questions in this case.  Thus, in my view, both prongs of Strickland v. Washington, 466 U.S. 668 (1984) could be implicated in the resolution of this matter.

*Trial Counsel's Performance*

Peralta's first 28 U.S.C. §2255 claim pertains to counsel's decision to withdraw a motion to dismiss premised on a speedy trial argument without securing an agreement with the United States that it would not argue that Peralta was a career offender. (Sec. 2255 Mem. at 2-3, 7-8.) Peralta believes that before withdrawing the motion to dismiss and negotiating the plea deal, counsel should have investigated Peralta's criminal history. (Id. at 7-10.)

Peralta describes the speedy trial motion as "winnable." (Id. at 10.) He explains:

> The crux of the argument in this ground for relief is the manner in which the guilty plea was obtained. Counsel filed a motion to dismiss the indictment pursuant to the over eight year delay in bringing the defendant/movant to court. The movant was for the entire time between indictment and arrest, a functioning part of society. He was always legally employed, and a legal resident Alien. The government at any time, could have, with minimal re[s]ources and diligence, established his whereabouts through the employment Social Security registers, Income Taxes paid in, or indeed the … Immigration Service. It cannot be said with truth to any extent that he was a fugitive or that his whereabouts w[ere] unknown. The movant was prejudiced in the delay as to any possibility of defending himself in trial with such a delay, i.e., witnesses move, evidence is no longer obtainable, or financial assistance availability. The Public, as well has an equal right to the "Speedy Trial" doctrine.

(Id. at 11.) Peralta represents that after the prosecutor offered a plea deal with the penalty range of 5 to 40 years, his attorney told him that "he was contacted by the AUSA in charge of the case who made him a firm offer of the sentence of five years." (Id. at 12.) His attorney "made a solemn promise" to Peralta "that he 'had a contract with the AUSA ' but, that first, movant would have to give him more money, some ten … thousand dollars more than the fifteen thousand[] already paid to him." (Id. at 12, 19.) Peralta believes that the prosecution exhibited bad faith in the plea negotiations when it convinced Peralta to withdraw the speedy trial motion and argues that the motion should be "re-instated." (Id. at 15.) "The point being," Peralta explains, "there existed a strong possibility that the entire case would have been dismissed with prejudice, had

3

[his] attorney... properly investigated the client's criminal history before so easily being mislead by [the] prosecution into dismissing the motion." (Id. at 16-17.)

In his motion to dismiss on speedy trial grounds Peralta relied heavily on Doggett v. United States, 505 U.S. 647 (1992). I do not think that there is any question that the length of delay in Peralta's case would have, if the motion came to a head, "trigger[ed] the speedy trial enquiry." Doggett, 505 U.S. at 652; see also id. n.1. Doggett involved an eight and one-half year lag between indictment and arrest and the Supreme Court spilled little ink in concluding that this was an "extraordinary" delay and was presumptively prejudicial. Id. at 652. The delay in this case is not as great but it is still well out of the ordinary. There is no dispute that Peralta asserted his speedy trial rights in a timely manner in the wake of his arrest. Peralta argued in his motion to dismiss that the prejudice flowing from the Government's delay in bringing his case is the impairment of his ability to prepare an adequate defense. (Mot. Dismiss at 7-8.) This was the prejudice at stake in Doggett, and the Supreme Court stressed this as the most serious form of prejudice. "'because the inability of a defendant to adequately prepare his case skews the fairness of the entire system.'" 505 U.S. at 654 (quoting Barker v. Wingo, 407 U.S. 514, 532 (1972)).

The crux of Peralta's complaint with trial counsel's performance, as I understand it, is that counsel should not have abandoned this non-frivolous speedy trial dismissal argument in exchange for a plea agreement that stipulated a specific amount of drugs but left him open to career offender status that would negate any benefit that could be obtained by limiting the proof as to the amount of drugs. It is hard to put this down entirely to "trial strategy" when counsel apparently did not attempt to mount an all out offensive against the career offender status.

In fairness to trial counsel, the PSI indicates that Peralta was born October 1, 1969. The United States contends that, as Peralta never objected to the statement in the PSI that he was born

4

in 1969 and was eighteen at the time of the crime, the Court was entitled to rely on these representations. (Id.)  While it is certainly true that the Court was entitled to rely on these unchallenged PSI representations, the question apropos Peralta's ineffective assistance claim is whether or not Peralta's trial attorney should have investigated the 1988 conviction more carefully.

At first blush the petitioner seems to frame his ground pertaining to his 1988 conviction as one that attacks only appellate counsel's conduct vis-à-vis this question; Peralta does not suggest that trial counsel was given any reason for lodging this particular attack. However, in his third ground Peralta does contend that the attorney that represented him during the pre-plea proceedings should have fully investigated the potential that Peralta would qualify as a career offender prior to advising Peralta to take the plea and forgo the motion to dismiss.[1]  Peralta's production of the sentencing transcript from 1988 suggests that counsel's diligent investigation could have produced the same result in anticipation of the sentencing hearing.  In this case, where counsel had given up whatever merit there might have been in the motion to dismiss, it was apparent that everything depended upon defeating the career offender status.  Whether counsel's failure to undertake that investigation constitutes a failure to perform in a competent manner in this case remains an open question and one upon which I would welcome appointed counsel's advocacy.

---

[1]  In fairness to trial counsel it must be noted that Peralta never suggests that he gave this attorney a reason to believe he was born in 1970 rather than 1969, but given that Peralta was born in a foreign country and had been sentenced for the youthful violation almost seventeen years before, he may have had no reason to know or remember his actual age when entering the guilty plea in this case.  The May 12, 2004, Rule 5 affidavit by the arresting U.S. Marshal indicates that the United States had identifying information apropos Peralta that listed his birthday as October 1, 1969 and October 2, 1969. (Rule 5 Aff. at 2 n.1, Crim. No. 96-04-P-H, Docket No. 88.)  It also indicates that in May of 2004 Peralta was carrying a license with a date of birth identical to one of the October 1969 dates. (Id. at 3.)  These facts certainly undercut Peralta's claim that trial counsel should have suspected he was seventeen in 1988 before the change of plea on this charge.

*The Prejudice Prong*

On this score it is important to note that counsel and the Court, while presuming that Peralta was 18-years-old at the time, explored the significance of the fact that the 1988 youth offender adjudication resulted in a probation-only sentence. During the sentencing, defense counsel indicted that his information was that he thinks his client would have committed the crime three to four months after his eighteenth birthday, whereas other cases dealing with the issue had involved whether or not under-eighteen-convictions should be treated as adult convictions. (Sentencing Tr. at 6-7.) Sentencing counsel argued that in Peralta's case there was no jail sentence and the five-year term of probation was terminated after two years. (Id.)[2]

> The Court reasoned:
>
> Turning to paragraph 31 of the presentence report, it is clear that the defendant was 18 or older at the time of the offense. It's also clear that the penalty could exceed one year, although in that case, it did not, but as I read from the definition, the actual sentence imposed does not make a difference. It's the possible sentence.
> I have read the Second Circuit case. I agree there is no First Circuit case directly on point. In addition to the Cuello decision that the lawyers have cited, I also note United States versus Sampson, a later 2004 decision, that deals specifically with New York procedure of youthful offender status, and that is consistent with the government's position that the later lenient treatment for youthful offenders does not erase the conviction. That occurs upon the initial plea or trial, and therefore the youthful offender adjudication remains countable under the guidelines.
> I conclude, therefore, that paragraph 31 does qualify as a predicate offense.

(Id. at 13.)

As the First Circuit noted, Peralta's career offender status was properly determined under the 1995 version of the United States Sentencing Guidelines. United States v. Peralta, 457 F.3d

---

[2] Counsel also questioned whether the Court should rely on Second Circuit law in this analysis. The First Circuit clearly approved of this approach in its decision on direct appeal.

169, 170 (1st Cir. 2006).  Section 4B1.2 of the Guidelines contains the definition of "prior felony conviction" as that phrase is used in the 1995 version of U.S.S.G. § 4B1.1. Application note 3 to that Guideline reads as follows:

> "Prior felony conviction" means a prior adult federal or state conviction for an offense punishable by death or imprisonment for a term exceeding one year, regardless of whether such offense is specifically designated as a felony and regardless of the actual sentence imposed. A conviction for an offense committed at age eighteen or older is an adult conviction. A conviction for an offense committed prior to age eighteen is an adult conviction if it is classified as an adult conviction under the laws of the jurisdiction in which the defendant was convicted (e.g., a federal conviction for an offense committed prior to the defendant's eighteenth birthday is an adult conviction if the defendant was expressly proceeded against as an adult).

U.S.S.G. § 4B1.2, comment. (n.3) (Nov. 1995).

Second Circuit law does not necessarily grant relief to Peralta even if he had been seventeen at the time of adjudication, as the District correctly surmised at the time of sentencing. Furthermore, the First Circuit cited to the Second Circuit's United States v. Jones, 415 F.3d 256 (2d Cir. 2005), a case not decided at the time of this sentencing, for the proposition that the Panel could take notice of the fact that an adult "conviction" is a necessary prerequisite to a youthful offender adjudication.  Jones "considered whether New York State youthful offender adjudications are 'classified as' adult convictions under New York law for the purposes of the Career Offender guideline."  Id. at 261.  In reaching the conclusion that the youthful offender convictions could qualify as convictions for U.S.S.G. § 4B1.2 purposes, the Court analyzed United States v. Cuello, 357 F.3d 162 (2d Cir. 2004), and observed: "In Cuello, unlike the previous cases discussed, we considered a section of the Guidelines that contained the precise language at issue in this case: <u>a conviction that occurs before the age of eighteen</u> will be deemed an adult conviction 'if it was classified as an adult conviction under the laws of [New York].'"

7

Compare U.S.S.G. § 4B1.2, comment. (n.1) with U.S.S.G. § 2K2.1, comment. (n.5)." 415 F.3d at 263 (emphasis added). The Court reasoned:

> [F]ollowing the pragmatic approach set out in the previous cases, the Cuello Court reasoned that classification as an adult conviction under the laws of New York does not mean we look to whether New York calls it a conviction, but rather, that we look to the substance of the proceedings. See id. at 168. Accordingly, we held that the Cuello defendant's youthful offender adjudication was "classified" as an adult conviction under the laws of New York because the defendant "was indisputably tried and convicted in an adult forum, and ... served his sentence in an adult prison." Id. at 168- 69. In conjunction with this holding, we again noted that the nature and purpose of New York's youthful offender statute indicate that a youthful offender adjudication does not eliminate defendant's culpability entirely, see id. at 167-68, and cited with approval a case from another circuit applying youthful offender adjudications to the Career Offender guideline, id. at 168 (citing United States v. Pinion, 4 F.3d 941 (11th Cir.1993)). It logically flows that our holding in Cuello should be applied to this case. Thus, Jones's 1993 youthful offender adjudications should be deemed "adult convictions" as Jones (1) pleaded guilty to both felony offenses in an adult forum and (2) received and served a sentence of over one year in an adult prison for each offense.

Id. at 263 -64.

How the sentencing judge in this case would have applied the New York youthful offender law to Peralta's prior conviction, if it had known that Peralta was only seventeen at the time of the sentence remains unknown. It appears, however, the Court would have had some legal leeway to employ the "pragmatic" approach in a situation where a seventeen-year-old never served a day's incarceration for the offense in any facility, adult or otherwise.

In appointing counsel to represent Peralta and highlighting the aforementioned issues, I am not limiting how appointed counsel may choose to proceed with this petition. I will allow counsel sixty days to review this petition and the Government's initial response. By August 31, 2007, counsel for Peralta should file either a motion for an evidentiary hearing, a motion to amend the petition, other appropriate motion, and/or a supplemental memorandum in support of the petition to vacate. If counsel determines, in his best judgment after researching all of the

8

facts and circumstances[3], that he wishes to rest on the arguments already submitted by Peralta, he may certainly do so.  In the event that counsel requests an evidentiary hearing he should provide by way of affidavit the substance of the anticipated testimony.  The Government can have normal response time to respond to any motion and/or supplemental memorandum filed by petitioner's counsel.

    *SO ORDERED*

| | |
|---|---|
| June 28, 2007 | /s/ Margaret J. Kravchuk |
| | U.S. Magistrate Judge |

---

[3] Part of my "interests of justice" concern here is that the Government's response raises more questions in my mind than it provides good answers.  I can imagine solid reasons for defense counsel proceeding as he did in dropping the motion to dismiss (such as the possibility of additional charges), but those sorts of answers do not appear on the record before me.  The record -- based on the representations in the speedy trial motion -- is that Peralta stayed out of further trouble during the period between the time he was indicted and the time of his arrest.  If he succeeded in his motion to dismiss on a Doggett argument, it would not seem that the United States could re-indict Peralta for the same criminal conduct after the court concluded that there was sufficient prejudice in the delay to warrant granting his motion to dismiss.   It is a mystery to me why competent counsel would abandon the motion to dismiss in exchange for the high likelihood of a career offender sentence and not explain to his client the real risks involved in the guilty plea.  The state of Second Circuit law involving the youthful offender adjudication was not helpful to Peralta at the time of the plea and retained counsel was an attorney who practiced law in Brooklyn, New York and should have been familiar with the likely outcome.